HENRY WEINBURGH et al.

*v.*

THE UNION STREET RAILWAY ADVERTISING COMPANY et al.

1. Where stockholders, at a special meeting, did not object to it as irregularly called, but in a protest filed assumed its regularity, and the restraining order which they sought to procure was against a regularly-called meeting, any objection to the regularity of the call for the meeting must be deemed to have been waived.

2. The by-laws of a corporation provided that at special meetings of stockholders the Corporation act of 1896 should apply as to the casting of all votes. The only provision of the Corporation act relating to the casting of votes, is the thirty-sixth section, authorizing votes by shares at elections of the directors.—*Held*, that the voting at a special meeting must be by shares, and a provision in the by-laws relating to amendments thereof requiring the affirmative vote of a majority of the stockholders at a special meeting, means the majority in interest.

3. Under such by-laws as to special meetings and a by-law providing that at annual meetings the right to vote should be determined as provided by statute, the rule of voting by shares should be the rule as to casting of votes for all purposes.

On application for preliminary injunction. Heard on bill and affidavits, and answers and affidavits.

*Mr. William R. Barricklo* and *Mr. Horwitz* (of the New York bar), for the complainants.

*Mr. Charles D. Thompson,* and *Mr. Marshall* (of the New York bar), for the defendants.

EMERY, V. C.

The bill in this case is filed by three of the six stockholders of the Union Street Railway Advertising Company, against the company and the other three stockholders, who are also three of the four directors of the company, the fourth director being Henry Weinburgh, one of the complainants. The main object

Weinburgh *v.* Union Street Railway Advertising Co.

of the bill is to enjoin the defendant directors and the company from acting under certain amendments to the by-laws of the company, which were adopted solely by the vote of the three defendant stockholders.  One of the by-laws so adopted confers, or purports to confer, upon the directors of the company increased power of removal of officers of the company, and the other confers upon the president alone powers which are now exercised by him under the supervision or control of the directors.  I think there can be no question but that the by-laws in question do regulate the internal affairs and management of the company in such important particulars that, unless they have been legally adopted, the complainants, as stockholders, are entitled to the aid of this court in preventing action under cover of their authority.

The jurisdiction of the court for this purpose was not questioned at the argument, the contention of the defendants being that the amendments to the by-laws were lawfully adopted. The disputed amendments to the by-laws were adopted on May 24th, at a meeting of the stockholders, at which the three individual defendants were present and voting for them, being holders of shares as follows: Michael Weinburgh, six hundred and sixty-six shares; Robert M. Burnett, six hundred and sixty-five shares; Asa W. Dickinson, one share, being one thousand three hundred and thirty-two shares out of a total of two thousand shares.  This is the statement of the vote as given in the answers, although it would seem, by other statements in the pleadings, that Michael Weinburgh is the owner on record of seven hundred and thirty-two shares.  The complainants are each owners of record of two hundred shares (six hundred in all), and there are no other stockholders than the complainants and individual defendants.

The meeting of the stockholders to consider the proposed amendments to the by-laws was a special meeting, originally called for May 15th, 1897, and at this meeting the complainants were all present in person, and were attended, also, by their counsel.  At this meeting no objection was made by either of the complainants or by their counsel that the special meeting

had not been properly called. They presented a protest in writing, against the consideration of the proposed amendments, on the ground that they were contrary to law and interfered with the vested rights of the complainant Henry Weinburgh, who was and is treasurer of the company.

A bill has been filed by the present complainants against the present individual defendants (the company not being a party) to restrain the removal of Henry Weinburgh from his office as treasurer, and from passing on the proposed by-laws to accomplish that purpose; and pending the hearing of an application for preliminary injunction action on the proposed by-laws was restrained except to adjourn the meeting, which was duly adjourned to May 24th. The restraining order was discharged on the hearing and the proposed amendments to the by-laws were adopted at the adjourned meeting of May 24th, 1897, by the vote above mentioned, none of the complainants being present at the adjourned meeting. The validity of these amendments to the by-laws was attacked at the hearing on three grounds:

*First.* Because the special meeting was illegally called.

*Second.* Because the quorum required by the by-laws for special meetings was not present at the meeting of May 24th, when the amendments were adopted.

*Third.* Because under the existing by-laws of the company, as is claimed by complainants, an amendment to the by-laws can be made only by the affirmative vote of a majority in number of the stockholders, and cannot be made by a majority in interest.

The second ground of objection was not set up in the bill but was relied on at the hearing.

As to the first objection, that the special meeting was not regularly or legally called, the affidavits in reply to the bill show that the requirements of the by-laws in this particular were followed, and in view of the failure of the complainants, at the special meeting of May 15th, to object to the meeting as irregularly called, and in view also of their protest, which assumed a regularly-called meeting, and of the restraining order which they

procured as against a regularly-called meeting, the objection cannot be considered as affording a ground for preliminary injunction in the present case, even if the irregularity of the meeting was conceded. Under these circumstances, objection to the regularity of the call for the meeting should, for the purposes of the present application, be considered as a matter of form which has been waived by the complainants, and the only objections urged by the bill which I shall consider are the other objections which go to the merits of the case.

The claim of the complainants is that, under the by-laws in force at the time of the special meeting of May 24th, a majority in number of the stockholders of record was necessary to constitute a quorum at the special meeting, and also that by the by-laws an amendment thereto can only be adopted by the affirmative of a majority in number of these stockholders. If either of these claims be well founded, the by-laws in question have not been legally adopted and action under them should be enjoined. The company was incorporated under the general law of 1894, and the provisions relating to amendments and quorums in its by-laws as originally adopted, provided (article 13):

"These by-laws may be altered or amended at any regular meeting of the stockholders, upon the affirmative vote of three-fourths in interest of the stockholders, and at any special meeting of the stockholders, upon the same vote" &c.

By these original by-laws also it was provided (article 1, section 2) that

"seventy-five per cent. in interest of the stockholders present, either in person or by proxy, shall constitute a quorum for the transaction of business at *all* meetings of stockholders."

Article 8 of these original by-laws also provides that "at *all* meetings of this company each share of stock shall be entitled to one vote either by proxy or in person."

By the revised Corporation act of 1875 (*Rev. p. 181 § 21*) it was provided that every company might determine by its by-laws

"what number of shares shall entitle the stockholders to one or more votes, what number of stockholders shall attend either in person or by proxy, or what number of shares or amount of interest shall be represented at any meeting in order to constitute a quorum, and if the quorum shall not be so determined by the company, a majority of the stockholders in interest represented, either in person or by proxy, shall constitute a quorum."

By an act of March 9th, 1891 (*P. L. of 1891 p. 113*), the section was amended and re-enacted with the insertion of a proviso "that in no case shall more than a majority of shares or amount of interest be required to be represented at any meeting in order to constitute a quorum." The by-laws of the company as originally adopted violated this proviso, which was then in force, by requiring seventy-five per cent. in interest of the stockholders to constitute a quorum. The by-laws were afterwards amended in March, 1897, and the original by-laws as to a quorum were changed so as to provide (article 1, section 2) that

"at *all* meetings of stockholders there shall be present, either in person or by proxy, stockholders owning a majority of the capital stock of the corporation in order to constitute a quorum."

And also (article 1, section 3) as to special meetings, "and a majority of all the stockholders of record shall alone constitute a quorum at each special meeting." As to the manner of voting, the by-laws of 1897 provided as follows:

Art. 1, Sec. 2. "Voting by proxy shall be allowed at all meetings of the stockholders of this company."

"Sec. 8. At all meetings of stockholders, all questions except the question of an amendment to the by-laws and the election of directors, and all such other questions the manner of deciding which is specially regulated by statute, shall be determined by a majority vote of the stockholders present in person or by proxy, provided a quorum, as hereinbefore provided for, be present and voting. At such meetings, any qualified voter may demand a stock vote, and in that case such stock vote shall be immediately taken, and each stockholder of record present in person or by proxy shall be entitled to one vote for each share of stock owned by him. All voting shall be *viva voce*, except that the stock vote shall be by ballot, each ballot stating the name of the stockholder voting and the number of shares owned by him, and in addition, if such ballot be cast by a proxy, it shall also state the name of such proxy.

"Sec. 9. At special meetings of stockholders, the provision of the act of the legislature entitled 'The Corporation Act of the State of New Jersey,' passed in 1896, shall apply to the casting of all votes."

The provision as to the amendment of the by-laws adopted in March, 1897, and in force when the amendments now in question were adopted, was as follows :

"Art. 7. These by-laws may be altered or amended at any regular meeting of the stockholders, upon the affirmative vote of a majority of the stockholders, and at a special meeting of the stockholders upon the same vote (provided notice be given)" &c.

The whole dispute between the parties on this branch of the case relates to the construction of the words " majority of the stockholders," as used in this by-law relating to amendments, and whether this means, as claimed by complainant, the majority in number of the stockholders or the majority in interest. It is insisted by complainant that the words "majority of stockholders," in their plain, clear, ordinary meaning, refer only to a majority of stockholders as persons, and that the question has been settled by the adjudication in reference to these words as used in a statute regulating voting, by the case of *Taylor* v. *Griswold, 2 Gr. 232 (Supreme Court, 1834)*. The charter considered in *Taylor* v. *Griswold* was that of a company organized to build bridges across the Passaic and Hackensack rivers and to exercise franchises considered by the court to be of a public character, requiring the discharge of a personal duty imposed on the members of the corporation, which could not, under the act, be discharged by proxy. There were no provisions in the act either for voting by proxy or for the casting of more votes than one by any stockholder. The court held that, at common law and independent of statute, the members of a corporation were each entitled to one vote, and no more, and that the provisions of the charter not only failed to allow one vote for each share, but its various provisions, which were cited (at *pp. 238, 239*), indicated clearly that the election of directors " by a majority of the stockholders " meant a majority in number of the stockholders, and not the majority in interest or the holders of a majority of the stock. Taken in connection with the general object of the charter and its other provisions, the court held that in this statute election by a majority of stockholders could not mean election by the holders of a majority of the stock.

But this construction of words, as used in this charter, cannot be considered as conclusive upon the question of the construction of the same words used by these stockholders in this by-law. The ruling of the court in that case is not, I think, to be considered an adjudication that the words "majority of stockholders" cannot, under any circumstances, be construed to mean a majority in interest of the stockholders, and the real question here is whether, in the present by-law, the words now in question, read in connection with the statutes relating to corporations and with the other portions of the by-laws, meant a majority in number or a majority in interest of the stockholders. And in the construction of the whole by-laws I think weight should also be given to the common, if not universal, practice of allowing voting by shares, in private business corporations, which has obtained in this state since the statute of March 11th, 1841 (*P. L. of 1841 p. 116*), and also obtains generally throughout the United States. This common knowledge and practice is the basis, I think, from which the ordinary stockholder of a private business corporation adopting by-laws, referring to a majority of stockholders, would to some extent be inclined to consider the meaning of the words as used in a by-law presented for adoption, and it cannot justly be laid out of view in considering the construction of a particular by-law, viewed in the scope of the entire by-laws adopted. Late cases in the courts of other states seem to hold that the natural and ordinary meaning of the words "majority of stockholders," without other qualifications, even in a statute, indicates a majority in interest and not in number. *Frederick* v. *Pennsylvania Canal Co., 109 Pa. St. 50 (1885)*. But whatever might be held to be the proper construction of the words standing alone, my view is that if upon the construction of the whole by-laws it appears that the words were intended to be used as meaning a majority in interest of the stockholders and not a majority in number, this construction of the words should be enforced. And upon the whole by-laws my opinion is that the words were used as meaning a majority in interest of the stockholders, and that this construction of the words not only in this provision as to amendment of by-laws

but also in the provision as to quorum, is the only construction which will allow all of the provisions of the by-laws to become effective. Article 1, section 9, provides that at all special meetings of stockholders the provisions of the Corporation act of 1896 shall apply to the casting of all votes. The only provision of the Corporation act relating to the casting of votes is the thirty-sixth section, authorizing the votes by shares at the election for the directors "unless otherwise provided in the charter certificate or by-laws of the corporation." I think that the sole object of this by-law (article 1, section 9) was to refer to that portion of this section 36 which regulated the casting of votes by shares, and that this reference was made for the purpose of applying this same rule, expressly declared in the statute, to the casting of votes at special meetings. As to the annual meetings the by-laws had already provided (article 1, section 4) that the right of any stockholder to vote shall be governed and determined as prescribed in an act concerning corporations of the state of New Jersey.

If this construction of the object and effect of article 1, section 9, is correct, then the voting at special meetings must be by shares, and the provision in the by-laws relating to amendments, requiring the affirmative vote of a majority of the stockholders at a special meeting must mean the majority in interest. The by-laws relating to amendments allowed the amendment by the same vote at regular and special meetings, and I think it appears from the fair and reasonable interpretation of these by-laws, relating to the casting of the votes, that at both the annual meeting (which was the only regular meeting of the stockholders) and at the special meetings, the rule of voting by shares, which was adopted in the statute as to the election of directors, should be the rule as to the casting of votes for all purposes, with the provision that, except in the cases of amendment to by-laws and election of directors, the first vote should be a show of hands, or majority in number, which should be final, unless a stock vote was demanded.

As to the amendment to by-laws and election of directors, it seems to have been assumed in articles 1, section 8, of the by-

laws that both of these matters were expressly regulated by statute, as governed by the same rule of voting by shares only, and therefore a preliminary vote by show of hands was not lawful. I can see no indication in any portion of these by-laws of any intention to control the powers given in the by-laws to the majority in interest, by giving to the simple majority in number the control of the amendment of the by-laws, and I therefore hold that the words were used here as meaning the majority in interest of the stockholders. It is my view, also, that in the provision that "majority of all the stockholders of record" shall alone constitute a quorum at a special meeting, the "majority" referred to is also a majority in interest. Otherwise, the provision is repugnant to the provision of article 1, section 2, that "at *all* meetings of the company there shall be present stockholders owning a majority of the stock in order to constitute a quorum." And it is also in violation of the act of 1891, Corporation act, section 17, providing that "in no case shall more than a majority of the shares or amount of interest be required at any meeting to constitute a quorum." This proviso as enacted repeals or qualifies to that extent the section as it previously stood, authorizing the company to determine what number of stockholders shall attend, either in person or proxy, to constitute a quorum.

I cannot adopt the construction of this act of 1891, insisted on by complainant, that after the passage of this amendment it was within the power of the company to provide that a quorum at any meeting must consist only of the majority in number of the stockholders. No more stockholders, in my view, could be required to be present in order to constitute a quorum than the owners of a majority or the stock. Adopting the above construction of these words, "majority of stockholders," the by-laws are consistent and effective throughout, and they also harmonize with the provisions of the statute. And taking into consideration, also, the general and recognized understanding as to the control of private business corporations, by the majority in interest rather than the majority in number of the stockholders, and the injurious results of committing to the control

of a minority of stockholders the regulation of its affairs in matters usually controlled by a majority, unless the by-laws clearly give such control, the construction I have adopted seems to me to be the reasonable construction in the absence of anything indicating that, in adopting these words, the stockholders clearly had in view the majority in number as distinct from the majority in interest of the stockholders. I hold, therefore, that these by-laws have been legally adopted, and this question being the only question presented on the hearing, the application for injunction is refused and the order discharged. The bill prayed an injunction against the removal of the complainant Henry Weinburgh as treasurer, but in view of the decision in the previous suit, which was handed down after the present bill was drawn, this application was not urged. Costs on this application will abide the final decree.